# UNITED STATES DISTRICT COURT

for the

Eastern District of Tennessee

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>A SILVER AND BLACK LG CELL PHONE, SERIAL NO.<br>311CYHE0438513 ("Device C") | )<br>)<br>)<br>)<br>)<br>)    Case No. 1:15-mj-273 |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____Tennessee_____
*(identify the person or describe the property to be searched and give its location)*:
The property to be searched is a silver and black LG cell phone, model LG-VS410PP, FCC ID number ZNFL38C, serial number 311CYHE0438513, hereinafter "Device C." Device C is currently located at the FBI office located at 633 Chestnut Street, Suite 540, Chattanooga, TN 37450. *A described in Attachment A*

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:
Telephone numbers stored in cell phone, recroded numbers of incoming, outgoing, or missed calls, or logged as return call phone numbers and/or stored text messages. All evidence of controlled substance transactions. *as described in Attachment B*

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _____September 24, 2015_____
                                                                                                                *(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.      ☐ at any time in the day or night as I find reasonable cause has been
                                                                                  established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
_____Susan K. Lee_____ .
                              *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐for ~~30~~ days *(not to exceed 30)*.
                                                              ☐until, the facts justifying, the later specific date of _____ .

Date and time issued: _9/17/15 at 3:14 p.m._                    _____
                                                                                                    *Judge's signature*

City and state:      _Chattanooga, Tennessee_          _Susan K. Lee, U.S. Magistrate Judge_
                                                                                            *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.:<br>1:15-mj-273 | Date and time warrant executed:<br>9/18/15  4:00pm | Copy of warrant and inventory left with:<br>Attorney of Cheywan Copeland |

Inventory made in the presence of :
TFO Jeremy Allman

Inventory of the property taken and name of any person(s) seized:
Contents of silver and black LG cell phone, serial # 311CYHE0438513

---

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date:  9/30/15

_____
_Executing officer's signature_

Drew Robinson, Special Agent
_Printed name and title_

## <u>ATTACHMENT A</u>

The property to be searched is a silver and black LG cell phone, model LG-VS410PP, FCC ID number ZNFL38C, serial number 311CYHE0438513, hereinafter "Device C." Device C is currently located at the FBI office located at 633 Chestnut Street, Suite 540, Chattanooga, TN 37450.

This warrant authorizes the forensic examination of Device C for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

1.    Evidence of user attribution showing who used or owned Device C during the planning and or commission of the violations of 18 U.S.C. § 924(c)(1)(A)(ii) and 18 U.S.C. § 2113(a) and (d) described in the affidavit.

2.    All records and data on Device C described in Attachment A that relate to violations of 18 U.S.C. § 924(c)(1)(A)(ii) and 18 U.S.C. § 2113(a) and (d) and the identities of those involved since August 15, 2015, including:

   a. Any data or information related to the identity of the person(s) who communicated with the user of Device C about matters relating to the commission of the above-referenced crimes;

   b. Any data or information, including GPS data, GPS data establishing the user's connection to the commission of the above-referenced crimes;

   c. Photographs evidencing the planning of, or individuals involved in, the commission of the above-referenced crimes;

   d. Web searches related to the commission of the above-referenced crimes; and

e. The assigned number of the cellular phone, text messages, deleted text messages, recently dialed or received numbers, voice mail messages, telephone numbers, GPS information, e-mail messages (to include deleted emails), address book information (including deleted addresses/phone numbers), videos and photographs related to the above-referenced crimes.

2

# UNITED STATES DISTRICT COURT

for the

Eastern District of Tennessee

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>A SILVER AND BLACK LG CELL PHONE, SERIAL NO.<br>311CYHE0438513 ("Device C") | )<br>)<br>)<br>)<br>)<br>) |

Case No. 1:15-mj-273

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
The property to be searched is a silver and black LG cell phone, model LG-VS410PP, FCC ID number ZNFL38C, serial number 311CYHE0438513, hereinafter "Device C."  Device C is currently located at the FBI office located at 633 Chestnut Street, Suite 540, Chattanooga, TN 37450.

located in the _____Eastern_____ District of _____Tennessee_____ , there is now concealed *(identify the person or describe the property to be seized):*
Telephone numbers stored in cell phone, recroded numbers of incoming, outgoing, or missed calls, or logged as return call phone numbers and/or stored text messages.  All evidence of controlled substance transactions.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2113(a) and (d) | Armed bank robbery |
| 18 U.S.C. 924(c)(1)(A)(ii) | Use or carrying and brandishing of a firearm during and in furtherance of a crime of violence |

The application is based on these facts:

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Drew Robinson, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/17/15 at 3:14 p.m.

_____
*Judge's signature*

City and state:  Chattanooga, Tennessee

Susan K. Lee, U.S. Magistrate Judge
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT
## FOR CHATTANOOGA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A SILVER AND BLACK LG CELL PHONE, SERIAL NO. 311CYHE0438513 ("Device C") | Case No. _1:15-mj-273_ |

### AFFIDAVIT IN SUPPORT OF AN
### APPLICATION UNDER RULE 41 FOR
### A WARRANT TO SEARCH AND SEIZE

I, Drew Robinson, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.     I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since February 2015.  I am currently assigned to the Chattanooga Resident Agency of the Knoxville Division and am assigned to the Safe Streets Task Force.  Prior to my employment with the FBI, I was a Detective with the Gulfport Police Department in Gulfport, Mississippi.  In my capacity as a

Special Agent and as a Detective, I have investigated several violent crimes, including murder and armed robberies. I have also conferred with multiple law enforcement officers and agents who have had extensive training with cell phone forensic examination during the course of this and numerous other investigations.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. The property to be searched is a silver and black LG cell phone, model LG-VS410PP, FCC ID number ZNFL38C, serial number 311CYHE0438513, hereinafter "Device C." Device C is currently located at the FBI office located at 633 Chestnut Street, Suite 540, Chattanooga, TN 37450.

5. The applied-for warrant would authorize the forensic examination of Device C for the purpose of identifying electronically stored data particularly described in Attachment B.

2

## PROBABLE CAUSE

6.     The information contained in this affidavit is based upon my own training and experience, my own knowledge, and information provided to me by other law enforcement officers and cooperating witnesses.

7.     The crime being investigated and prosecuted is armed bank robbery and the use or carrying and brandishing of a firearm during and in furtherance of a crime of violence, in violation of Title 18, United States Code, Sections 2113(a) and (d) and 924(c)(1)(A)(ii), respectively.

8.     On September 15, 2015, a federal grand jury in the Eastern District of Tennessee returned an indictment charging Nicholas Cheaton ("Cheaton"), Stephan Beasley ("Beasley"), and Cheywan Copeland ("Copeland") with aiding and abetting each other in committing armed bank robbery and using or carrying and brandishing a firearm during and in furtherance of a crime of violence.

9.     The following facts relate to the above-mentioned offenses:

    a.   On August 31, 2015, the Scenic Community Credit Union, located at

        7550 East Brainerd Road, Chattanooga, Tennessee 37421 was robbed.

        At approximately 11:00 a.m., two black males entered the bank with

        bandanas covering their faces.  One of the suspects, later identified as

3

Cheaton, jumped over the teller counter and stole money from the register. He put the stolen money into a backpack he had with him. He then entered the bank's vaulted area and stole a teller register box. The other suspect, later identified as Beasley, remained in the lobby where he held the male customer at gunpoint until, approximately one minute later, Cheaton ran out of the vault and the two then left the bank.

b. GPS tracking devices hidden in the stolen money led law enforcement to Cheaton's apartment complex. One responding officer ran into Copeland as she was trying to hide a backpack underneath a trashcan outside of the complex. The bag had cash and a GPS tracking device inside of it.

c. Copeland identified, and granted law enforcement officers consent to search, a parked gold Buick as the car she had driven to the apartment complex. FBI Special Agent J. Nix seized a black and white LG cell phone with a green and black case from the center console of the car. This phone is referred to as "Device A."

d. Meanwhile, police secured the apartment complex and ordered all residents outside. After approximately twenty minutes, Cheaton and

4

Beasley finally exited Apartment D. Cheaton identified himself as a resident of Apartment D and provided his written consent for police to search the home.

e.  The apartment is listed as Cheaton's official residence with U.S. Probation. Cheaton's sister rented the apartment and she allowed Cheaton to move in with her when he was released from his federal prison sentence just days earlier, on August 28, 2015.

f.  Inside of the apartment, police found a .40 caliber, Springfield Arms pistol, Model XD 40, serial number MG162275, loaded with five rounds. Next to the gun was a potato chip bag full of stacks of money, one of which contained the second GPS locator.

g.  Cheaton, Beasley, and Copeland were taken to the FBI to be interviewed. After being advised of and waiving his *Miranda* rights, Cheaton gave a video-taped confession. According to Cheaton, Copeland and Beasley picked him up from a meeting he had with his federal probation officer. Beasley told Cheaton that he wanted them to rob a bank. Beasley explained that Cheaton would go in and grab the money and Beasley would be there with a pistol to take care of anyone. After the meeting with his probation officer, Copeland

5

drove Cheaton and Beasley to an area near a BP gas station on East Brainerd Road where Cheaton and Beasley then got into a maroon Chevrolet Tahoe driven by a black female reportedly unknown to Cheaton. Copeland then picked them up in the gold Buick after the robbery and the three went to Cheaton's apartment.

h.  Surveillance video from outside of the federal courthouse corroborates part of Cheaton's story. Specifically, surveillance video captured Cheaton exiting the building and heading towards a parked gold Buick, where Copeland is then seen exiting the driver's seat and getting in the back passenger seat so that Cheaton could get into the driver's seat. The video also shows a black male, believed to be Beasley, in the front passenger seat. At several points, this individual got out of the car and spoke on the phone while he and Copeland waited for Cheaton to return to the car.

i.  Surveillance video from the bank adds further corroboration, as it captured a maroon SUV travelling past the camera. Based on the camera's location on the property, the camera likely caught the car after Cheaton and Beasley had already been dropped off. This individual driving this car remains unidentified.

6

j. Beasley denied having any knowledge of the bank robbery. Beasley claimed to have been sleeping and that he was woken up by police banging on the door. Beasley was arrested on a federal complaint that same day. Upon his arrest, police seized a black Verizon LG phone from him. This phone is referred to as "Device B."

k. After being advised of and waiving her *Miranda* rights, Copeland admitted to driving Cheaton to and from his meeting with his probation officer. She further admitted that Beasley had been in the car with her. Copeland stated that after Cheaton's meeting, she dropped Cheaton and Beasley off somewhere on Dodds Avenue. She stated that Beasley had made plans to meet someone there. When she dropped them off, she noticed three cars in the area, including a maroon truck. She stated that Beasley later called her and asked her to pick him and Cheaton up from a shopping plaza on East Brainerd Road and that she complied. Copeland denied knowing that the credit union was in that very same shopping plaza. Copeland stated that once she picked Beasley and Copeland up, the three of them then headed to Cheaton's apartment and that shortly thereafter, the police arrived.

7

l. Copeland was arrested on September 15, 2015, at which time she denied any involvement, including having picked up Beasley and Cheaton from the bank. At the time of her arrest, law enforcement seized a silver and black LG cell phone from her. This phone is referred to as "Device C."

10. Device C is currently in the lawful possession of the FBI. It came into the FBI's possession on September 15, 2015, when I, FBI Special Agent Robinson, seized it from Copeland upon arresting her. Since that date, Device C has been in storage at the FBI office located at 633 Chestnut Street, Suite 540, Chattanooga, TN 37450.

11. In my training and experience, I know that Device C has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when Device C first came into the possession of the FBI.

12. Based on my training and experience working violent crime cases, as well as information obtained during this particular investigation, I am aware that individuals who conspire to commit violent crimes, including bank robbery, often use cell phones to communicate with each other to facilitate their illegal operations. I know that upon arrest, the cell phones of suspects have saved

8

messages or previous calls received or dialed which are linked to the illegal activity. These individuals also maintain contact lists on cell phones of their co-conspirators and associates. Such suspects who use phones that have photo capability often have saved images of associates or of the cell phone owner or user.

## <u>TECHNICAL TERMS</u>

13.    Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and

9

moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media

10

players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer

11

connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the

12

structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

14.     Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at http://www.lg.com/us/cell-phones/lg-VS810PP-transpyre.   I know that Device C has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA, and that it allows for internet connectivity.   In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, who that user had contact with, including on a particular date and time, and, based on the user's GPS data, where that individual had been on a particular date and time.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

15.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.   Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.   This information can sometimes be recovered with forensics tools.

13

16.   *Forensic evidence.*   As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how Device C was used, the purpose of its use, who used it, and when.   There is probable cause to believe that this forensic electronic evidence might be on Device C because:

a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.   Forensic evidence on a device can also indicate who has used or controlled the device.   This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.   A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

14

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

17.    *Nature of examination.*   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

15

18. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

19. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of Device C described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Drew Robinson
Special Agent
FBI

Subscribed and sworn to before me
on September 17, 2015.

THE HONORABLE SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

16

## ATTACHMENT A

The property to be searched is a silver and black LG cell phone, model LG-VS410PP, FCC ID number ZNFL38C, serial number 311CYHE0438513, hereinafter "Device C." Device C is currently located at the FBI office located at 633 Chestnut Street, Suite 540, Chattanooga, TN 37450.

This warrant authorizes the forensic examination of Device C for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.    Evidence of user attribution showing who used or owned Device C during the planning and or commission of the violations of 18 U.S.C. § 924(c)(1)(A)(ii) and 18 U.S.C. § 2113(a) and (d) described in the affidavit.

2.    All records and data on Device C described in Attachment A that relate to violations of 18 U.S.C. § 924(c)(1)(A)(ii) and 18 U.S.C. § 2113(a) and (d) and the identities of those involved since August 15, 2015, including:

    a. Any data or information related to the identity of the person(s) who communicated with the user of Device C about matters relating to the commission of the above-referenced crimes;

    b. Any data or information, including GPS data, GPS data establishing the user's connection to the commission of the above-referenced crimes;

    c. Photographs evidencing the planning of, or individuals involved in, the commission of the above-referenced crimes;

    d. Web searches related to the commission of the above-referenced crimes; and

e.  The assigned number of the cellular phone, text messages, deleted text

messages, recently dialed or received numbers, voice mail messages,

telephone numbers, GPS information, e-mail messages (to include

deleted emails), address book information (including deleted

addresses/phone numbers), videos and photographs related to the

above-referenced crimes.

2